### ALONZO MATHEWS *v.* THE STATE.

1. FLIGHT — EVIDENCE. — In a trial for felony the prosecution was allowed, over objection, to prove that the defendant, while at large on bail, attempted to escape, but was pursued, overtaken, and surrendered by his

surety.  *Held,* that the flight of the defendant was admissible in evidence for what the jury might consider it worth as an inculpatory circumstance.

2. THEFT — OWNERSHIP. — At the trial of the appellant for theft of a horse alleged to belong to one G., the proof was that G. won the appellant's money at cards, and the appellant then sold and delivered the horse to G., and wagered the purchase-money paid him by G., who won it in the further progress of the game.  The succeeding night the appellant, without G.'s knowledge or consent, surreptitiously took the horse from the possession of G.  *Held,* that this state of proof suffices to sustain the allegation of ownership, and to support the conviction.

APPEAL from the District Court of Navarro.    Tried below before the Hon. D. M. PRENDERGAST.

The material facts appear in the opinion.    A term of five years in the penitentiary was the punishment assessed by the jury.

*H. W. Greer,* for the appellant.

*W. B. Dunham,* for the State.

WINKLER, J.    According to the testimony, this appellant and another, on a quiet Sunday morning, engaged in a quiet game of cards, in which fortune seems not to have favored the defendant.    One of the defendant's witnesses, who, it seems, was not present all the time, says the first time he saw them they (the players) put up $1.50.    The defendant seems to have been called Lon, which we suppose to be an abbreviation for Alonzo, the Christian name of the defendant; his adversary seems to have been called Tobe.    The witness, after mentioning the wager of $1.50, says: " Tobe won Lon's money; Lon put up his saddle; Tobe won that also; and Lon put up his horse, and Tobe won him."    There seems to be some discrepancy between the witnesses as to whether the defendant really staked the horse on the game, or whether he did not sell the horse to Tobe for $25 in money, and lost that instead of the horse; but be this as it may,

whether he staked the horse or the money, Tobe was the winner, either of the horse or the $25.

Counsel for the defendant states this part of the case in this way : " On Sunday morning, in January, 1878, the appellant and Tobe Green began playing cards at the latter's house for money.  Green won all of appellant's money, and appellant ' put up ' his saddle, and Green won that ; then appellant ' put up ' his coat, and Green won that also ; appellant then proposed to ' put up ' his horse, but Tobe thought it was ' against the law ' to play for a horse, so he proposed to pay $25 for the horse, with the understanding that they would play for the money, which they accordingly did ; Green was ' in luck,' decidedly, and won the $25 also ; this ended the game."  " Green," counsel continues, " took appellant's money and stuffed it down his pocket ; took his coat and put it on ; took his saddle and strapped it on his horse ; got on the horse and rode away, proud and happy, whilst appellant followed on foot, sad and dejected."

They went to Green's brother's house, when, counsel says, appellant was inveigled into signing a bill of sale ; after which Green locked the horse up in his brother's blacksmith shop, and appellant left, " a sadder, but not a wiser man."  That night, his counsel says, he returned, broke open the shop door, took his horse, and left.

The grand jury indicted the defendant for the theft of the horse, describing him as one certain gelding, and taken from the possession of the owner, Tobe Green.   The offence is set out by appropriate averments.   But this is not all.   The defendant, it seems, after his arrest, was admitted to bail, and was in the custody of his surety, S. W. Bell.   Some time before the trial, it seems he took it into his head that he would leave, and, putting the idea into execution, his surety followed him and brought him back without difficulty, and delivered him up to the sheriff.   The witness says he was within thirty yards of the defendant before the latter saw him ; and the witness had a Winchester rifle.

The defendant appears to have been vigorously defended in the court below, and well represented here by brief of counsel. When it was attempted, on the trial, to prove the attempted escape of the defendant, the defendant's counsel objected. The witness Bell being interrogated, and having answered as shown in the statement of facts, the defendant objected to the answer of the witness, and his objections having been overruled, the defendant reserved a bill of exceptions to the ruling of the court. The principal ground of objection to this testimony seems to be that the defendant, being on bail, was not required to remain at any particular place so that he was present at the trial, and that proof of an attempt to effect an escape under these circumstances was inadmissible, and calculated to prejudice his case in the estimation of the jury. The position contended for by counsel would, we are of opinion, be carrying the doctrine too far. Whilst not, perhaps, in the actual custody of his sureties, still the principal is not free from the control of his sureties. It is said that the custody of the principal has been confided to his sureties, and they are said to be his keepers, and hence those who have become bail for the accused may at any time relieve themselves of their undertaking by surrendering the accused into the custody of the sheriff (Code Cr. Proc., art. 297), which seems to have been done in this case. The evidence was admissible to go to the jury for what they might consider it worth as a circumstance indicative of guilt.

At least a portion of the defence relied on was that, the horse having been won at a game of chance, the right by which the alleged owner held the property would not support a prosecution for the theft of property thus acquired. This theory of the defence is embodied in a charge asked by the defendant's counsel, and which was refused by the court, as follows : —

" If the jury believe from the evidence that the horse in controversy was won at a game of chance, and that there

was no valid consideration paid for the gelding alleged to have been stolen, in the indictment, and that the defendant took the horse, believing he had not parted with the title thereto, though the taking may have been wrongful, the jury cannot find the defendant guilty of theft."

The court declined to give the jury the instruction requested, giving as a reason therefor, that the general charge, it was believed, contained the correct rule on the subject. We are of opinion that the general charge of the court fully submitted to the jury the issues arising upon the evidence. The following instruction, in opposition to that asked, was given by the court : —

" If Green bought and paid for the horse, and possession was delivered to him, it would be immaterial where he got the money with which such payment was made ; whether he borrowed the whole, or a part, or any portion of it, or not ; nor would the fact that said Green afterwards won this money from the defendant on cards make any difference."

If this had been a civil action for the recovery of the horse, the argument of counsel and the authorities cited in support thereof would have been more appropriate. As it is, however, there was evidence going to show that the horse was sold by the defendant and delivered to Green, the alleged owner. This was an issue in the case, and was submitted to the jury for their determination. The jury having determined that issue against the defendant, and there being testimony to support it, we are of opinion the conviction was proper, even though the testimony showed that the defendant, subsequently to the purchase and sale, did lose the money he received for the horse, at cards, with the purchaser.

Finding no material error, the judgment must be affirmed.

*Affirmed.*